### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF KENTUCKY
### LOUISVILLE DIVISION

| | | |
|---|---|---|
| **RAYMOND LOGAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No.:**   4:21CV-00008-JHM |
| | ) | |
| **UNITED PARCEL SERVICE, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### COMPLAINT AND DEMAND FOR JURY TRIAL

### I. NATURE OF THE CASE

1.      This is an action brought by Plaintiff, Raymond Logan ("Logan"), by counsel, against Defendant, United Parcel Service, Inc. ("Defendant"), alleging violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e. *et. seq.* and the Kentucky Civil Rights Act.

### II. PARTIES

2.      Logan is a resident of the State of Kentucky, who at all relevant times to this action resided within the geographical boundaries of the Western District of Kentucky.

3.      Defendant operates and conducts business within the geographical boundaries of the Western District of Kentucky.

### III. JURISDICTION AND VENUE

4.      Jurisdiction is conferred on this Court over the subject matter of this litigation pursuant to 28 U.S.C. §1331; 28 U.S.C.§1343 and 42 U.S.C. §2000e-5(f)(3).

5.      Defendant is an "employer" as that term is defined by 42 U.S.C.  §2000e(b) and KRS3444.030(2).

6.      Logan was an "employee" as that term is defined by 42 U.S.C. §2000e(f) and KRS344.030(5).

7.      Logan satisfied his obligation to exhaust his administrative remedies having timely filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission against Defendant alleging discrimination based on race. Logan received his Notice of Suit Rights, dated November 12, 2020, and timely files this action.

8.      A substantial part of the events, transactions, and occurrences concerning this case arose in the geographical environs of the Western District of Kentucky; thus, venue is proper in this court.

## IV. FACTUAL ALLEGATIONS

9.      Defendant is a parcel carrier and provides parcel carrier services throughout the county, including the state of Kentucky.

10.      Logan, an African American male, was hired by Defendant on August 8, 1987, in a part-time position at Defendant's Center located at 2801 Warehouse Road, Owensboro, Kentucky 42301. After remaining in a part-time position for approximately three (3) years Logan was placed into a Driver position which required him to deliver packages to business and residential addresses.

11.      During all relevant time periods, Logan met or exceeded the Defendant's legitimate performance expectations.

12.     Logan was the only African American employed at his location until in or around 2010, when three (3) other African Americans were hired on a part-time basis. There was not another African American hired for a full-time position in Logan's location until in or around 2015.

13.     Throughout Logan's employment with the Defendant, Logan suffered from discrimination based on his race. At various times, other employees, including supervisors, addressed Logan using racial slurs, without repercussions.

14.     As further relevant background information, in or around 2015, Logan worked, without issue, directly with another UPS employee named Melissa, until she reported to their supervisor that she could no longer work with Logan because he was "black." The supervisor accommodated Melissa's request, and was complicit in the blatant discrimination directed at Logan.  This supervisor even went so far as to directly aid Melissa when he accompanied her to meet Logan for a package transfer and did the physical transfer himself so that Melissa did not have to direct contact with Logan.

15.     In 2018, the discrimination against Logan escalated. Logan was continually given deliveries to addresses in very rural areas, which he felt unsafe in, especially after dark. When making these deliveries Logan was victimized by individuals who resided in such areas.

16.     Logan was threatened and often called derogatory, racial slurs by these residents.

17.     Given this disparate treatment along with the fact that many individuals were openly discriminatory against African Americans, Logan feared for his safety. Logan requested to be transferred from that particular route and was denied by management, although management accommodated other Caucasian employees' requests to transfer.

18.     As a result of management's denial of his request, Logan reported the situation to Human Resources ("HR"). Logan informed the Center Manager, Ryan Streete, that he had made a report to HR. The following day Mr. Streete terminated Logan's employment, citing dishonesty as the reason for his termination. The reason given was pretext for discrimination. Logan learned that the alleged dishonesty stemmed from a time when he input his break time incorrectly, although that was common among drivers, without adverse action.

19.     Prior to this termination, Logan had never received a write up or verbal discipline. Logan filed a grievance with UPS and was ultimately reinstated to his prior position, however, he received a two-month suspension for his alleged "dishonesty." Logan also filed a Charge of Discrimination with the EEOC.

20.     Following his reinstatement, Management, including Ryan Streete, scrutinized Logan's work, including parking on Logan's street to observe him while on break. Similarly-situated Caucasian employees were not subjected to the same scrutiny.

21.     On Friday, March 13, 2020, in the regular course of his employment, Logan was to deliver packages along a route in Spotsville, Kentucky. The week prior, due to a faulty gas gauge on the vehicle Logan was driving, Logan ran out of gas and had to call

4

for help. When that same vehicle was returned to Logan on March 13th, he was informed that the faulty gauge had been fixed, but he soon noticed it was acting up again, so Logan stopped at a gas station to confirm the amount of gas in the truck. Management again accused Logan of being dishonest, instructing that he should have recorded the stop as part of his break time – something not required of similarly-situated Caucasian drivers.

22.     On March 6, 2020, while on that same route, Logan discovered that a bridge that was necessary to cross in order to get to this route would be closing at 6 pm each Friday for construction. Upon discovering that the bridge would be closing, Logan made sure that he made it back to cross before 6 pm and in doing so, was unable to deliver all of his packages. He labeled those packages as "unable to deliver" due to emergency conditions. Logan notified management of the bridge closure. The following week, when the same event occurred, Logan crossed the bridge at 5:45pm and labeled his remaining packages as "future," meaning they would be delivered on Monday.

23.     Further, on that same date, Logan was stopped by an older couple, who asked if he could take a package for them. Logan complied with the request, as was a common occurrence and encouraged by the Defendant.

24.     On or about March 23, 2020, Defendant terminated Logan for alleged dishonesty without any explanation of how Logan was "dishonest." The reason given for the termination is pretext for discrimination based on Logan's race and/or in retaliation for engaging a protected activity.

25.     Following his termination, Logan filed a grievance with UPS. A hearing was conducted to determine if Logan's termination should be upheld. While the panel

conducting the hearing deadlocked and no decision was made as to Logan's termination, Logan was again subjected to racial discrimination by Matt Fostic, the Center's Labor Manager.       After the hearing concluded and everyone was leaving, Mr. Fostic referred to the union stewards present with Logan as Johnnie Cochran and Robert Shapiro, inferring that Logan was akin to O.J. Simpson.

26.     Because the original panel that conducted Logan's grievance hearing was deadlocked and no decision was made, a second hearing was held in which Logan's termination was upheld.

27.     Defendant discriminated against Logan based on his race in violation of Title VII of the Civils Rights Act, in their own actions and by condoning the actions of other employees by allowing their discrimination.

28.     Further, Defendant retaliated against Logan by terminating his employment in 2018 and again in 2020 after Logan made reports and complaints regarding the race discrimination that he was being subjected to.

## V. CAUSES OF ACTION

### COUNT I: VIOLATION OF TITLE VII & KCRA-RACE DISCRIMINATION

29.     Logan hereby incorporates paragraphs one (1) through twenty-eight (28) of his Complaint.

30.     Defendant violated Logan's rights and discriminated against him based on his race.

31.     Defendant's actions were intentional, willful, and in reckless disregard of Logan's rights as protected by Title VII of the Civil Rights Act of 1964 and the Kentucky Civil Rights Act.

32.     Logan has suffered damages as a result of Defendant's unlawful actions.

### COUNT II: VIOLATION OF KCRA & TITLE VII RACE RETALIATION

33.     Logan hereby incorporates paragraphs one (1) through thirty-two (32) of his Complaint.

34.     Defendant violated Logan's rights by retaliating against him for engaging in a protected activity by terminating his employment.

35.     Defendant's actions were intentional, willful, and in reckless disregard of Logan's rights as protected by Title VII of the Civil Rights Act of 1964 and the Kentucky Civil Rights Act.

36.     Logan has suffered damages as a result of Defendant's unlawful actions.

### VI. REQUESTED RELIEF

WHEREFORE, Plaintiff, Raymond Logan, by counsel, respectfully requests that this Court find for Plaintiff and:

1.     Permanently enjoins Defendant from engaging in any employment policy or practice that discriminates against any employee on the basis of his/her race;

2.     Reinstate Plaintiff to the position, salary, and seniority level he would have enjoyed but for Defendant's unlawful employment actions, or award him front pay in lieu thereof;

3.      Order that the Plaintiff be awarded any back pay he would have earned, including fringe benefits with related money benefits and interests thereon, absent Defendant's unlawful acts;

4.      Award the Plaintiff compensatory damages, consequential damages, and lost wages and benefits in an amount sufficient to compensate Plaintiff for the damages caused by the Defendant's wrongful actions;

5.      Award the Plaintiff his attorney fees, litigation expenses, and costs incurred as a result of this action;

6.      Award the Plaintiff pre-and post-judgement interest on all sums recoverable; and

7.      Grant such other relief as may be just and proper.

Respectfully Submitted,

BIESECKER DUTKANYCH & MACER, LLC

By: */s/ Jennifer Cornell Smith*
Jennifer Cornell Smith
101 N. 7th Street
Louisville, KY 40202
Telephone: (502) 561-3443
Facsimile: (812) 424-1005
jcornellsmith@bdlegal.com

Kyle F. Biesecker, IN Atty. No. 24095-49
Lauren E. Berger, IN Atty. No. 29826-19 (*pro hac vice motion forthcoming*)
411 Main Street
Evansville, Indiana  47708
Telephone:      (812) 424-1000
Facsimile:      (812) 424-1005
E-Mail:         kfb@bdlegal.com
                lberger@bdlegal.com

*Counsel for Plaintiff, Raymond Logan*

**DEMAND FOR JURY TRIAL**

Plaintiff, Raymond Logan, by counsel, request a trial by jury on all issues deemed so triable.

Respectfully Submitted,

BIESECKER DUTKANYCH & MACER, LLC

By: */s/ Jennifer Cornell Smith*
Jennifer Cornell Smith
101 N. 7th Street
Louisville, KY 40202
Telephone: (502) 561-3443
Facsimile: (812) 424-1005
jcornellsmith@bdlegal.com

Kyle F. Biesecker, IN Atty. No. 24095-49
Lauren E. Berger, IN Atty. No. 29826-19 (*pro hac vice motion forthcoming)*
411 Main Street
Evansville, Indiana  47708
Telephone:    (812) 424-1000
Facsimile:    (812) 424-1005
E-Mail:    kfb@bdlegal.com
          lberger@bdlegal.com

*Counsel for Plaintiff, Raymond Logan*