UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

RAYMOND LOGAN,                                                                    Plaintiff,

v.                                                          Civil Action No. 4:21-cv-08-DJH-HBB

UNITED PARCEL SERVICE, INC.,                                                     Defendant.

* * * * *

**MEMORANDUM AND ORDER**

Plaintiff Raymond Logan sued Defendant United Parcel Service, Inc. (UPS), his former employer, alleging violations of Title VII of the Civil Rights Act of 1964 and the Kentucky Civil Rights Act (KCRA). (Docket No. 1)  UPS moves for summary judgment.  (D.N. 37)  After careful consideration, the Court will grant in part and deny in part UPS's motion for summary judgment for the reasons explained below.

**I.**

Logan, an African-American man, was hired by UPS in 1987 and promoted to Package Car Driver in 1990.  (D.N. 89-3, PageID.1097)  As a Package Car Driver, Logan delivered packages along a specified route.  Logan worked as a package car driver for UPS for more than three decades before his 2018 and 2020 terminations.  (D.N. 89-1, PageID.1009; *see also* D.N. 89-3, PageID.1097)  Logan's disciplinary record was clean throughout these three decades, until the issues leading up to his terminations.  (D.N. 89, PageID.997; *see generally* D.N. 97)  Logan "received many awards for [his] tenure and for [his] safe driving."[1]  (D.N. 93, PageID.1137)

_____

[1] UPS contends that Logan has proffered an inadmissible post-deposition declaration. (D.N. 97, PageID.1174; *see* D.N. 93)  Declarations that contradict an earlier deposition and are made after a motion for summary judgment may not be considered by the Court on summary judgment. *Peck v. Bridgeport Machs., Inc.*, 237 F.3d 614, 619 (6th Cir. 2001).  A deponent's declaration directly

Package Car Drivers select their routes based on seniority, but UPS managers could add stops to a driver's route.  (D.N. 93, PageID.1137)  Before Logan's 2018 termination, he contacted human resources "plenty of times" to verbalize his discomfort about delivering packages on "Highway 351," an area that UPS added to his route, because of the racial animosity he experienced while delivering packages there.  (D.N. 89-1, PageID.1046, 1080)  According to Logan, residents in that area used racial epithets toward him and threatened to physically harm him; customers complained about him being in the area; and there were Confederate flags and bumper stickers "everywhere." (*Id.*, PageID.1030, 1045–46, 1079, 1086)  When Logan spoke with his supervisor, Ryan Streete, about his concerns, Streete responded: "If that was me, I would just run faster." (D.N. 89-1, PageID.1044)

UPS collects GPS-like data for its drivers, which tracks and monitors each driver's stop, its length, and its location.  (D.N. 37-2, PageID.139–40; *see* D.N. 37-1, PageID.99)  According to Logan, this data was widely known to be inaccurate, which is why the collective bargaining agreement (CBA) between UPS and the union included a provision that "[n]o driver shall be discharged based solely upon information received from GPS, telematics, or any successor system that similarly tracks or surveils a driver's movements unless [they] engage[] in dishonesty."  (D.N. 89-1, PageID.1031–32; D.N. 37-19, PageID.252)  In July 2018, Streete noticed through UPS's telematics that Logan was exceeding his "route time" without explanation, so he "had a

---

contradicts his deposition if he was "asked specific questions about, yet denied knowledge of, the material aspects of [his] case." *Powell-Pickett v. A.K. Steel Corp.*, 549 F. App'x 347, 353 (6th Cir. 2013).  The question cited by UPS—asking whether Logan testified about all the facts that he believes support his claim (D.N. 97, PageID.1174-75)—is not a "specific" question. *See Powell-Pickett*, 549 F. App'x at 353.  Moreover, Sixth Circuit "precedent[] suggest[s] a relatively narrow definition of contradiction." *Reich v. City of Elizabethtown*, 945 F.3d 968, 976 (6th Cir. 2019) (internal quotations omitted); *see also Johnson v. Ford Motor Co.*, 13 F.4th 493, 501 (6th Cir. 2021); *cf. Reich v. City of Elizabethtown*, 945 F.3d 968, 977 (6th Cir. 2019).  The Court therefore cites to the declaration.. *Peck*, 237 F.3d at 619.

conversation with Logan about the excess time[] and stressed the importance of recording" all breaks.  (D.N. 37-4, PageID.183)  Believing his telematics to be inaccurate, Logan asked Streete to ride along with him for the day to see that he had not been exceeding his route time.  (D.N. 89-1, PageID.1029)  Logan testified that his telematics appeared to be an hour and a half behind during the entire ride-along, but nothing had caused them to fall behind.  (*Id.*)  Logan further testified that Streete recognized that there was "a problem" with Logan's telematics.  (*Id.*)  But when Logan attempted to communicate with Streete about the continued issue with his telematics exceeding his expected route-time, Streete told him to "get out of [Streete's] office and . . . go to work." (*Id.*, PageID.1030)

In September 2018, Streete again noticed that Logan's telematics showed that he was averaging "more than two hours of unaccounted for time" on his route.  (D.N. 37-4, PageID.183; D.N. 37-8, PageID.201)  Streete decided to "observe[] Logan on his route in real time" and take notes.  (D.N. 37-4, PageID.183–84)  After observing him, Streete concluded that Logan was not accurately recording his breaks.  (*Id.*)  That same day, Logan failed to deliver fourteen packages. (D.N. 37-8, PageID.201)  He returned to the UPS facility with the packages and "sheeted," or identified, twelve of the packages as missed and two as emergency.  (*Id.*)  Scott Smith, an on-road supervisor, held a meeting with Logan, Streete, and Union Steward Scott Connor the next day. (D.N. 37-7, PageID.200)  In this meeting, Streete addressed Logan's failure to deliver the fourteen packages and properly record his breaks.  (D.N. 37-8, PageID.201)  Logan responded that he did not deliver the fourteen packages because the stops were located on "Highway 351" and he felt unsafe delivering packages in that area at night.  (*See id.*; D.N. 37-7, PageID.200; D.N. 89-1, PageID.1080)

After this meeting, Logan reported Streete to HR, stating that Streete's response to his safety concern was racially discriminatory. (D.N. 89-1, PageID.1045; *see also* D.N. 93, PageID.1140) Logan then told Streete that he had reported him to HR, and UPS fired Logan "the next day." (D.N. 89-1, PageID.1045) According to UPS, Streete was involved in Logan's 2018 termination. (D.N. 89-3, PageID.1107) Logan was later reinstated with a two-month suspension after a hearing before the state panel, which consisted of equal numbers of Union and UPS representatives. (D.N. 89-1, PageID.1032, 1061; D.N. 37-17, PageID.218) Logan filed a complaint with the Equal Employment Opportunity Commission (EEOC) in June 2019, alleging race discrimination and retaliation, and received his right-to-sue notice in July 2019. (D.N. 93, PageID.1140) Logan informed Streete and other co-workers of his right-to-sue notice soon after receiving it. (D.N. 37-11, PageID.207; D.N. 93, PageID.1140)

Logan worked for UPS for more than a year after his suspension, until he was terminated again in March 2020. (D.N. 37-16) The events leading to his 2020 termination were much like the ones leading to his 2018 termination. On March 5, 2020, Logan's telematics showed that he drove off-route and did not record twenty-seven minutes of break time. (D.N. 37-14) A week later, on March 13, 2020, Logan failed to deliver forty-two packages, and his telematics showed that he failed to record a break more than an hour long. (D.N. 37-15; D.N. 89-1, PageID.1051, 1054–55) Logan went on a scheduled vacation the next day. (D.N. 37-13, PageID.1052) Upon his return, UPS fired him. (D.N. 37-16)

According to Logan, he failed to deliver the packages because a bridge on his route closed at 6:00 p.m. (*Id.*, PageID.1050) He testified that he did not take the alternative route because it was through "Highway 351," and he "didn't want to deliver in an area where [he] didn't feel safe again at nighttime." (*Id.*, PageID.1050, 1080) Logan again filed a grievance with UPS, but the

4

state panel upheld his termination.  (D.N. 37-17, PageID.218)  Following one of the state-panel hearings, Logan heard Matt Faulstick, the labor manager involved in Logan's 2018 and 2020 terminations, refer to two union stewards present with Logan as "Johnnie Cochran and Robert Shapiro."  (D.N. 89-1, PageID.1075; D.N. 89-3, PageID.1098)

Logan subsequently filed this action against UPS, alleging race discrimination and retaliation under Title VII of the Civil Rights Act of 1964 and the KCRA.  (D.N. 1)  Specifically, Logan asserts that UPS discriminated against him on its own and by "condoning" the discriminatory actions of other employees.  (*Id.*, PageID.6 ¶ 27)  Logan also alleges that UPS terminated him in 2018 and 2020 in retaliation for reports and complaints that he made about experiencing racial discrimination.  (*Id.*, PageID.6 ¶ 28)  UPS moves for summary judgment on all of Logan's claims.  (*See* D.N. 37)

## II.

Summary judgment is required when the moving party shows, using evidence in the record, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a), 56(c).  For purposes of summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party.  *Loyd v. Saint Joseph Mercy Oakland*, 766 F.3d 580, 588 (6th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).  The Court "need consider only the cited materials," however.  Fed. R. Civ. P. 56(c)(3); *see Shreve v. Franklin Cnty.*, 743 F.3d 126, 136 (6th Cir. 2014).  If the nonmoving party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)," the fact may be treated as undisputed.  Fed. R. Civ. P. 56(e)(2)–(3).  To survive a motion for summary judgment, the nonmoving party must establish a genuine issue of material fact with respect to each element of each of his claims.  *Celotex Corp. v. Catrett*,

477 U.S. 317, 322–23 (1986) (noting that "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial").

Logan alleges that UPS discriminated and retaliated against him in violation of both Title VII and the KCRA.  (D.N. 1)  KCRA claims are evaluated under the same standard as Title VII claims.  *Perry v. AutoZoners, LLC*, 948 F. Supp. 2d 778, 787 (W.D. Ky. 2013) (citing *Smith v. Leggett Wire Co.*, 220 F.3d 752, 758 (6th Cir. 2000)); *Clark v. United Parcel Service, Inc.*, 400 F.3d 341, 347 (6th Cir. 2005).  Accordingly, the Court will analyze Logan's race-discrimination and retaliation claims under the Title VII framework.  *Clark*, 400 F.3d at 347.

## A.    Preemption

UPS argues that Logan's KCRA claims are preempted by Section 301 of the Labor Management Relations Act (LMRA).  (D.N. 37-1, PageID.117–19)  The LMRA preempts state-law claims which are "substantially dependent on analysis of a collective-bargaining agreement [(CBA)]."  *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 394 (1987) (quoting *Electrical Workers v. Hechler*, 481 U.S. 851, 859, n.3 (1987)).  According to UPS, Logan's state-law claims are preempted because they require interpretation of the term "dishonesty" under the CBA to determine whether Logan was properly terminated for engaging in "dishonesty."  (D.N. 37-1, PageID.118–19)

Analyzing the elements of racial discrimination or retaliation does not require interpretation of the term "dishonesty," however.  *See Caterpillar*, 482 U.S. at 394; *Campbell-Jackson*, 2024 U.S. App. LEXIS 30294, at *19; *Laster*, 746 F.3d at 726.  At most, it requires reference to or application of the term "dishonesty" under the CBA.  *Lopez v. UPS*, No. SACV 21-01492-CJC, 2021 U.S. Dist. LEXIS 213780, at *10 (C.D. Cal. Nov. 3, 2021) ("[I]n the context of § 301 complete preemption, the term 'interpret' is defined narrowly—it means something more

than 'consider,' 'refer to,' or 'apply.'"); *see also White v. GE*, No. 96-5709, 1997 U.S. App. LEXIS 21063, at *7 (6th Cir. Aug. 4, 1997) ("The inquiry into [the defendant's] motivation [for terminating the plaintiff] does not require an interpretation of the terms under the [CBA]."). Therefore, Logan's claims are not preempted under the LMRA.[2] *Caterpillar*, 482 U.S. at 394.

## B.    Race Discrimination

Title VII makes it unlawful for employers to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Where, as here, the plaintiff attempts to prove race discrimination through circumstantial evidence, courts analyze the plaintiff's claim under the *McDonnell-Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–07 (1973); *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014). Under this framework, the plaintiff has the initial burden of establishing a prima facie case of race discrimination. *Laster*, 746 F.3d at 726. If the plaintiff meets this burden, the burden shifts to the employer to establish a legitimate, non-discriminatory reason for the adverse employment decision. *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009). If the employer carries this burden, the burden then shifts back to the plaintiff to demonstrate that the employer's proffered reason is a pretext for illegal discrimination. *Id.*

### 1.    Logan's Prima Facie Case

A prima facie case of race discrimination requires the plaintiff to show that he was "(1) a member of a protected class, (2) subject to an adverse employment action, (3) qualified for the position, and (4) replaced by a person outside the protected class or treated differently than

---

[2] UPS has attempted to make this argument in other district courts, and those courts have likewise rejected the argument. *See, e.g., Paris v. UPS*, No. 3:21-cv-711, 2023 U.S. Dist. LEXIS 170108, at *9 (D. Conn. Sept. 25, 2023); *Lopez*, 2021 U.S. Dist. LEXIS 213780, at *10.

similarly situated nonminority employees." *Tennial v. UPS*, 840 F.3d 292, 303 (6th Cir. 2016). UPS disputes only the third and fourth elements of Logan's prima facie case. (*See* D.N. 37-1, PageID.108–11) Alternatively, however, a plaintiff can establish a prima facie case by "show[ing] that the employer made statements indicative of a discriminatory motive." *Lewis-Smith*, 85 F. Supp. 3d at 900 (quoting *Barnes v. Gencorp, Inc.*, 896 F.2d 1457, 1466 (6th Cir. 1990)); *see also Phelps v. Yale Sec., Inc.*, 986 F.2d 1020, 1025 (6th Cir. 1993).

### a.    Whether Logan is Qualified

At the prima facie stage, "a Title VII plaintiff need only show that [he] satisfied an employer's 'objective' qualifications" to establish that he was qualified for the position. *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 585 (6th Cir. 2009) (citing *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 575-76 (6th Cir. 2003)). Courts have found plaintiffs to be qualified when their experience and performance objectively qualified them for the position. *See, e.g.*, *Tennial*, 840 F.3d at 300, 303 (finding that the plaintiff was qualified despite performance issues "because he had over 30 years of experience at UPS"); *Myers v. United States Cellular Corp.*, 257 F. App'x 947, 952 (6th Cir. 2007) ("[Plaintiff's] performance coupled with her experience objectively qualified her for the management position."). Here, Logan worked as a package car driver for UPS for more than thirty years, and he received awards for his tenure and safe driving. (*See* D.N. 89-3, PageID.1097; D.N. 93, PageID.1137; D.N. 89-1, PageID.1009) Although UPS asserts that Logan had performance issues in 2018 and 2020 which led to his terminations (D.N. 37-1, PageID.109), "a court may not consider the employer's alleged nondiscriminatory reason for taking an adverse employment action when analyzing the prima facie case." *Wexler v. White's Fine Furniture*, 317 F.3d 564, 574 (6th Cir. 2003). The Court will consider any poor performance under the second step of the *McDonell-Douglas* framework. *Cicero v. Borg-Warner Auto., Inc.*,

280 F.3d 579, 585, 588 (6th Cir. 2002). Given Logan's thirty years of experience as a package car driver for UPS and his awards for safe driving, Logan is objectively qualified for the position. *See Upshaw*, 576 F.3d at 585; *see also Tennial*, 840 F.3d at 300, 303.

        **b.**    **Whether Logan was Treated Less Favorably than Similarly Situated Non-Minority Employees**

To demonstrate less favorable treatment than non-minority employees, a plaintiff must establish that he was similarly situated to the non-minority employees "in all relevant respects." *Ayers-Jennings v. Fred's Inc.*, 461 F. App'x 472, 476 (6th Cir. 2012) (citing *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352–53 (6th Cir. 1998)). A proposed comparator is similarly situated if they "engaged in acts of 'comparable seriousness'" as the plaintiff. *Dickens v. Interstate Brands Corp.*, 384 F. App'x 465, 468 (6th Cir. 2010) (quoting *Clayton v. Meijer, Inc.*, 281 F.3d 605, 611 (6th Cir. 2002)). When determining whether acts are of "comparable seriousness," courts may consider "whether the individuals 'have dealt with the same supervisor, have been subject to the same standards[,] and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Id.* (quoting *Ercegovich*, 154 F.3d at 352)).

Logan contends that he "has identified three Caucasian comparators, Will Whitaker, Jack Hundley, and Hugh Boarman, who engaged in falsification of their time[] cards on multiple occasions and were not terminated." (D.N. 89, PageID.993–94) In support, Logan cites his deposition testimony that he "was told by UPS Union Stewards Arnold and Voyles that after [his] termination, [these] Package Car Drivers at the Owensboro location engaged in falsification of their time cards on multiple occasions and were not terminated." (D.N. 93, PageID.1143) UPS contends that this "testimony is classic hearsay" and "must be disregarded." (D.N. 97, PageID.1165)

"[E]vidence submitted in opposition to a motion for summary judgment must be admissible. Hearsay evidence . . . must be disregarded." *Alpert v. United States*, 481 F.3d 404, 409 (6th Cir. 2007) (internal quotations omitted) (quoting *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1189 (6th Cir. 1997)). Here, Logan relies on the unsworn statements of his union stewards for the truth of what they asserted. *See* Fed. R. Evid. 801(c). Logan's testimony is therefore barred by the rule against hearsay and may not be considered. *See, e.g.*, *Dickens*, 384 F. App'x at 470 (rejecting inadmissible hearsay testimony about alleged comparator). In any event, Logan has not shown that those employees "dealt with the same supervisor," *id.* at 468, or "engage[d] in performance failures of comparable seriousness" by also failing to deliver packages. *Tennial*, 840 F.3d at 305.

Logan also points to Kenneth Lamar, Collin Carrico, Jerome Hayes, and Greison Bales as Caucasian comparators. (D.N. 89, PageID.994; *see also* D.N. 89-3, PageID.1103) Logan contends that these individuals were treated more favorably because they were "reprimanded for failing to properly record time and deliver all assigned packages" between 2018 and 2020, rather than terminated. (D.N. 89, PageID.994; D.N. 89-3, PageID.1103) Again, however, Logan has not shown that those employees are "similarly situated [to him] in all relevant aspects." *Ayers-Jennings*, 461 F.3d at 476. Logan has not addressed whether the employees "dealt with the same supervisor," *Dickens*, 384 F. App'x at 468, or "engage[d] in performance failures of comparable seriousness" by failing to deliver packages and record breaks on multiple occasions. *Tennial*, 840 F.3d at 305; *see also Lewis-Smith v. W. Ky. Univ.*, 85 F. Supp. 3d 885, 900 (W.D. Ky. 2015). He thus has not shown that Lamar, Carrico, Hayes, and Bales are valid comparators.

Lastly, Logan argues that Holly McCormick, a white package driver at the Owensboro facility, is a valid comparator. (D.N. 89, PageID.994) According to Logan, McCormick "was

10

removed from a route when she expressed concerns for her safety, unlike Logan." (*Id.*; *see* D.N. 89-1, PageID.1076; D.N. 93, PageID.1142 ¶ 25)  But Logan has not put forth any evidence that McCormick is "similarly situated [to him] in all relevant aspects." *Ayers-Jennings*, 461 F.3d at 476.  For instance, Logan has failed to proffer evidence as to whether he and McCormick dealt with the same supervisor. (*See* D.N. 89)  Nor has he provided any argument as to why the same-supervisor requirement should be relaxed in this case. *See Redlin v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599, 610 (6th Cir. 2019) ("[W]e have noted that the 'same supervisor' requirement will be relaxed where a violation 'does not occur frequently enough to invite such a direct comparison within a compartmentalized organization.'" (quoting *Seay v. Tenn. Valley Auth.*, 339 F.3d 454, 479–80 (6th Cir. 2003)); *see also Seay*, 339 F.3d at 479–80 (relaxing the same-supervisor requirement because "a violation such as vehicle misuse does not occur frequently enough"). Logan seemingly solely relies on the fact that both he and McCormick were package car drivers (*see* D.N. 89, PageID.994), which is insufficient for the Court to find that they are similarly situated. *See Dickens*, 384 F. App'x at 468.

### c.   Statements Indicative of a Discriminatory Motive

As previously noted, a plaintiff may establish a prima facie case by "show[ing] that the employer made statements indicative of a discriminatory motive." *Lewis-Smith*, 85 F. Supp. 3d at 900 (quoting *Barnes*, 896 F.2d at 1466); *see also Phelps*, 986 F.2d at 1025 ("[Race]-related comments referring directly to the worker may support an inference of [race] discrimination."). To support a prima facie case, the statements indicative of a discriminatory motive "must be sufficiently probative to allow a factfinder to believe that the employer intentionally discriminated against the plaintiff because of" race. *Barnes*, 896 F.2d at 1466; *see also Peeples v. City of Detroit*, No. 13-13858, 2019 U.S. Dist. LEXIS 17200, at *14 (E.D. Mich. Feb. 4, 2019).  The statements

must also have been "made in the context of the challenged decision to terminate [the employee]." *Lewis-Smith*, 85 F. Supp. 3d at 900.

Here, Logan testified that immediately following one of the grievance hearings to determine whether his termination would be upheld, Faulstick called two union stewards present with Logan "Johnnie Cochran and Robert Shapiro," in reference to the O.J. Simpson trial.[3] (D.N.89-1, PageID.1075; D.N. 89-3, PageID.1098)  According to Logan, the suggestion that he was akin to O.J. Simpson "has, at best, racial overtones" and was made in the context of his termination.  (D.N. 89, PageID.1000)

Courts, including the Sixth Circuit, have found statements referring to O.J. Simpson to be indicative of racial animus.  *See, e.g.*, *Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 343 (6th Cir. 2012) (finding that three statements, including a "'joke' that O.J. Simpson was innocent" demonstrated "racial animus towards African Americans"); *Berryman v. SuperValu Holdings, Inc.*, No. 3:05CV169, 2010 WL 1257838, at *13 (S.D. Ohio Mar. 31, 2010), *aff'd*, 669 F.3d 714 (6th Cir. 2012) ("[T]he Court notes that other courts have concluded that . . . suggestions of racial animosity (such as . . . the potentially racial overtones of the O.J. Simpson drawing) were sufficient to at least create a genuine issue of material fact on the question of whether these incidents were based on race."); *Serrano v. Francis*, 345 F.3d 1071, 1083 (9th Cir. 2003) (finding on a § 1983 claim that statements by a hearing officer, including a statement that "[the prisoner] was not O.J.

---

[3] Although Logan does not cite these statements in support of his prima facie case, he points to them as evidence of pretext.  (*See* D.N. 89, PageID.999–1000)  The Court may nonetheless consider these statements as evidence in support of Logan's prima facie case.  *See* Fed. R. Civ. P. 56(f) (prohibiting courts from *granting* summary judgment on grounds not raised by the parties without notice and reasonable opportunity to respond); *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991) ("When an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law.").

Simpson or Johnnie Cochran," created an issue of material fact as to whether "the decision not to allow live witness testimony [during a disciplinary hearing] was racially motivated"). A reasonable jury could therefore find that Faulstick's O.J. Simpson comment reveals a discriminatory motive. *See Barnes*, 896 F.2d at 1466; *see also Rumble v. Convergys*, No. 1:07-cv-979, 2009 U.S. Dist. LEXIS 125645, at *23 (S.D. Ohio Nov. 9, 2009). Moreover, Faulstick was involved in the decisions to terminate Logan (D.N. 89-3, PageID.1098), and the statement was made in the context of Logan's termination. (D.N. 89-1, PageID.1075) Thus, these statements are "sufficiently probative to allow a factfinder to believe that [UPS] intentionally discriminated against [Logan] because of" his race. *Barnes*, 896 F.2d at 1466; *see also Lewis-Smith*, 85 F. Supp. 3d at 900.

In sum, and because the plaintiff's burden is "not onerous" at the prima facie stage, the Court finds that Logan has met his burden. *Ondricko v. MGM Grand Detroit, LLC*, 689 F.3d 642, 654 (6th Cir. 2012).

## 2.    Pretext

The burden next shifts to UPS to provide a legitimate, non-discriminatory reason for Logan's termination. *See Chen*, 580 F.3d at 400. Poor performance, failure to follow expressed directions, and violations of work policies or rules are legitimate, non-discriminatory reasons to terminate an employee. *See, e.g.*, *Strickland v. City of Detroit*, 995 F.3d 495, 512 (6th Cir. 2021); *Yazdian v. ConMed Endoscopic Techs., Inc.*, 793 F.3d 634, 652 (6th Cir. 2015); *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 546 (6th Cir. 2008). UPS has therefore provided a legitimate, non-discriminatory reason for terminating Logan: his failure to accurately record breaks and his failure to deliver all packages without communicating with management. (D.N.

37-1, PageID.115)   The burden thus shifts back to Logan to demonstrate that UPS's proffered reason is a pretext for illegal discrimination. *See Chen*, 580 F.3d 394, 400.

A plaintiff can establish pretext "(1) by showing that the proffered reason had no basis in fact; (2) by showing that the proffered reason did not actually motivate the employer's conduct[;] or (3) by showing that the proffered reason was insufficient to warrant the challenged conduct." *White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 245 (6th Cir. 2005).   When evaluating pretext, "court[s] should consider all [probative] evidence in the light most favorable to the plaintiff, including the evidence presented in the prima facie stage." *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 779 (6th Cir. 2016) (quoting *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 812 (6th Cir. 2011)).

Here, Logan provides evidence to dispute the factual basis of his termination.   (*See* D.N. 89-1, PageID.1052–53)   UPS's stated issue with Logan's failure to deliver forty-two packages on March 13, 2020, was that he did so without contacting management.   (*See* D.N. 37-1, PageID.98; D.N. 89-3, PageID.1098)   But Logan testified that he communicated with a supervisor named Austin while marking the packages as missed that day.   (D.N. 89-1, PageID.1052–53)   Moreover, UPS had not disciplined Logan in the past for failing to deliver all packages for the same reasons. (D.N. 93, PageID.1139; *see also* D.N. 89-1, PageID.1051)   Because the Court may not make credibility determinations, Logan has demonstrated a genuine issue of fact as to whether UPS's proffered reason for terminating him "lacks a basis in fact." *White*, 429 F.3d at 245; *see also Zarza v. Bd. of Regents of the Univ. of Mich.*, No. 22-1776, 2023 U.S. App. LEXIS 11114, at *12–13 (6th Cir. May 5, 2023) (finding that summary judgment was inappropriate because the plaintiff pointed to evidence creating a genuine dispute as to whether the defendant's justification lacked a basis in fact); *Strickland*, 995 F.3d at 513 ("[C]redibility determination and weighing of [the

p]laintiff's testimony is inappropriate on summary judgment when a court must view the evidence in the light most favorable to the party opposing the motion." (internal quotations omitted)).

As additional evidence of pretext, Logan points out that UPS wavered in its rationale for terminating him. (D.N. 89, PageID.998 n.2) "An employer's changing rationale for making an adverse employment decision can be evidence of pretext." *Eades v. Brookdale Senior Living, Inc.*, 401 F. App'x 8, 12 (6th Cir. 2010) (quoting *Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1167 (6th Cir. 1996)). Shifting rationales for terminating a plaintiff calls into question the credibility of those rationales and "shows a genuine issue of fact that the [employer's] proffered reason" was false and a pretext for discrimination. *Id.* The guiding principle is whether a reasonable factfinder could "conclude that the[] changes are indicative that the currently-proffered explanation is false." *Id.*

Logan's 2018 and 2020 discharge letters state that he was terminated for engaging in "dishonesty" under Article 17(a) of the Central CBA. (D.N. 37-16; D.N. 37-9) UPS's interrogatory responses specifically mention only his failure to deliver packages as the reason for his terminations. (D.N. 89-3, PageID.1098, 1106) But in its motion for summary judgment, UPS alleges that Logan was terminated for marking packages as missed without contacting management *and* improperly recording breaks. (D.N. 37-1, PageID.115) Logan testified, however, that when he was fired in 2018 and 2020, UPS told him that he was fired for his failure to properly record breaks, and his failure to deliver certain packages was never made an issue. (D.N. 89-1, PageID.1030 ("Streete [told] me that—they don't fire me for [failing to deliver packages]. They couldn't fire me for that. He [told] me that . . . I didn't clock-out on my break."), 1050 ("[T]hey said I didn't record my break correctly again."))

15

UPS has not disputed that it cannot rely solely on telematics to terminate an employee. (*See* D.N. 97; *see also* D.N. 89, PageID.996–97; D.N. 37-19, PageID.252)  Thus, if UPS told Logan it terminated him only for his failure to record breaks—based solely on his telematics—but then added Logan's failure to deliver packages as a justification during litigation, a reasonable jury could find that UPS's proffered reason was false and a pretext for discrimination.  *Eades*, 401 F. App'x at 12.  A reasonable jury could conclude that UPS adding such a justification during litigation calls into question UPS's true motivation for terminating Logan.  *See id.*; *Gaglioti v. Levin Grp., Inc.*, 508 F. App'x 476, 482 (6th Cir. 2012); *Cicero v. Borg-Warner Auto., Inc.*, 280 F.3d 579, 592 (6th Cir. 2002) (finding that an employer's changed justification for terminating an employee raised an issue as to the employer's motivations for termination when it gave one justification to the employee during termination but another in answering interrogatories).  Viewed in the light most favorable to Logan, the "post-hoc nature of [UPS's] justification" indicates that its proffered reason is false and creates a genuine dispute of material fact as to whether it was a pretext for discrimination.  *Briggs v. Univ. of Cincinnati*, 11 F.4th 498, 517 (6th Cir. 2021); *see also Eades*, 401 F. App'x at 12.

In sum, Logan has put forth sufficient evidence to create a genuine issue of fact as to pretext.  *See Eades*, 401 F. App'x at 12; *Hamilton v. GE*, 556 F.3d 428, 437 (6th Cir. 2009).  UPS's motion for summary judgment will therefore be denied as to his race-discrimination claims.

## C.    Retaliation

Title VII prohibits "retaliat[ing] [against] employees who have opposed discriminatory employment practices."  *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007); *see also Smith*, 220 F.3d at 758 (finding that KCRA claims are evaluated under the same standard as Title VII claims).  As with the Title VII race-discrimination claim, claims asserting Title VII retaliation

using circumstantial evidence, such as Logan's, are analyzed under the *McDonnell-Douglas* burden-shifting framework. *See McDonnell Douglas Corp.*, 411 U.S. at 802–07; *Campbell-Jackson v. State Farm Ins.*, No. 23-1834, 2024 U.S. App. LEXIS 30294, at *19 (6th Cir. Nov. 27, 2024).

To establish a prima facie case of retaliation, Logan must show that "(1) [h]e engaged in a protected activity; (2) h[is] 'exercise of such protected activity was known by the defendant; (3) thereafter, the defendant took an action that was "materially adverse" to [him]; and (4) a causal connection existed between the protected activity and the materially adverse action.'" *Rogers v. Henry Ford Health Sys.*, 897 F.3d 763, 775 (6th Cir. 2018) (quoting *Laster*, 746 F.3d at 730). UPS disputes that there is a causal connection between Logan's protected activity and his termination. (D.N. 37-1, PageID.111–14)

To establish causation, a plaintiff "must produce sufficient evidence from which an inference can be drawn that the defendant took the adverse employment action because the plaintiff engaged in protected activity." *Hymes v. Dep't of the A.F.*, No. 23-3210, 2024 U.S. App. LEXIS 3563, at *12 (6th Cir. Feb. 12, 2024) (quoting *Bledsoe v. Tenn. Valley Auth. Bd. of Dirs.*, 42 F.4th 568, 588 (6th Cir. 2022)). Logan is not required to establish that his protected activity was "the sole or even the primary reason for the termination," but he is required to show that it "was a substantial and motivating factor in the decision to terminate" him. *Blount v. Stanley Eng'g Fastening*, 55 F.4th 504, 515 (6th Cir. 2022) (quoting *Bush v. Compass Grp. USA, Inc.*, 683 F. App'x 440, 453 (6th Cir. 2017)). Generally, this requires proof that "there is a close temporal relationship between the protected activity and the adverse action." *Id.* (quoting *Bush*, 683 F. App'x at 453); *see also McQueen v. Barr*, 782 F. App'x 459, 465 (6th Cir. 2019).

17

Logan argues he engaged in three protected activities: his regular complaints to HR about UPS "not hiring any Black[]" employees, his 2018 complaint to HR about Steele's discriminatory conduct, and his 2019 EEOC complaint.  (D.N. 89, PageID.1000; D.N. 89-1, PageID.1010)

### 1.    Complaints to HR about not Hiring Black Employees

According to Logan, he "periodically" made complaints to HR about UPS "not hiring any Black[]" employees, including in 2007, 2008, 2009, 2010, and 2011.  (D.N. 89-1, PageID.1010–14)  These complaints to HR are protected activities.  (*Id.*)  Complaints to management or human resources "opposing discriminatory practices," *Greer v. Cummins, Inc.*, No. 22-5663, 2023 U.S. App. LEXIS 28183, *11 (6th Cir. Oct. 23, 2023), or reporting "potential violations of Title VII" are "protected activit[ies] for purposes of establishing a prima facie case of retaliation." *Funk v. City of Lansing*, 821 F. App'x 574, 583 (6th Cir. 2020) (quoting *Trujillo v. Henniges Auto. Sealing Sys. N. Am., Inc.*, 495 F. App'x 651, 655 (6th Cir. 2012)).

But Logan has failed to establish causation as to these protected activities.  Years elapsed between the complaints and his terminations in 2018 and 2020.  (D.N. 89-1, PageID.1010–14)  Thus, there is a lack of temporal proximity between these events.  *See Blount*, 55 F.4th at 515; *McCormick v. Gasper*, No. 22-1033, 2022 U.S. App. LEXIS 30559, *28 (6th Cir. Nov. 1, 2022) ("[M]ulti-year gaps between the protected conduct and the first retaliatory act is insufficient to establish causation.").  Logan has also failed to present any other evidence linking his terminations to his protected activities. *Cf. Kirilenko-Ison v. Bd. of Educ. of Danville Indep. Sch.*, 974 F.3d 652, 664 (6th Cir. 2020) (finding that the plaintiffs could overcome the lack of temporal proximity by offering other circumstantial evidence suggesting causation).  Therefore, Logan has not presented evidence "from which an inference can be drawn that [UPS] took the adverse employment action because" Logan complained to HR. *Hymes*, 2024 U.S. App. LEXIS 3563, at *12.  In sum, Logan

failed to establish causation between his complaints to HR and his terminations and accordingly failed to establish a prima facie case of retaliation.  *See id.*

### 2.    Complaint to HR about Steele's Discriminatory Conduct

Logan also contends that he engaged in protected activity when he reported Streete's response to his safety concerns as racially discriminatory.  (D.N. 89, PageID.1000)  As before, complaints to HR about "potential violations of Title VII" are protected activities.  *Funk*, 821 F. App'x at 583.  But any retaliation claims as to Logan's 2018 HR complaint and termination would arise under state law, not Title VII.  *See* Ky. Rev. Stat. § 413.120.  Logan's Title VII claims as to his 2018 termination are time-barred because Logan did not sue UPS until February 2021 (*see* D.N. 1), long after Title VII's ninety-day statutory limit.  *See Townsend v. Rockwell Automation, Inc.*, 852 F. App'x 1011, 1014 (6th Cir. 2021); *see also Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 557 (6th Cir. 2000) ("[F]ederal courts have strictly enforced Title VII's ninety-day statutory limit.").  Nonetheless, Logan may assert a KCRA claim based on his 2018 HR complaint and termination because KCRA claims are governed by a five-year statute of limitations.  Ky. Rev. Stat. § 413.120; *see Walker v. Ky. Educ. TV*, 503 S.W.3d 165, 172 (Ky. Ct. App. 2016).

Unlike the 2020 termination, however, there is temporal proximity between Logan's 2018 HR report and termination.  UPS fired Logan two days after Logan told Streete that he had reported him to HR.  (D.N. 89-1, PageID.1032, 1045, 1061; *see also* D.N. 89-3, PageID.1098)  Temporal proximity alone can establish causality "[w]here an adverse employment action occurs very close in time after an employer learns of a protected activity," typically "just days or weeks."  *Campbell-Jackson*, 2024 U.S. App. LEXIS 30294, at *20.  But when an "employer 'proceed[s] along lines previously contemplated,' [courts] must not take the temporal proximity of the adverse

employment action as evidence of causality." *Montell v. Diversified Clinical Servs.*, 757 F.3d 497, 507 (6th Cir. 2014) (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001)).  The Court therefore "must determine 'what made [the employer] fire [the employee] *when it did*.'" *Id.* (quoting *Hamilton*, 556 F.3d at 441).

Here, Streete documented Logan's inaccurate recording of breaks and his failure to deliver all packages on September 4 and 6—a few days prior to Logan's HR report.  (D.N. 37-8; D.N. 37-9; D.N. 89-1, PageID.1045)  After observing Logan's route in real time on September 6, 2018, Streete concluded that Logan was not recording his full break time and noticed that he had failed to deliver fourteen packages.  (D.N. 37-4, PageID.183–84; D.N. 37-8, PageID.201)  He then met with Logan, Smith, and Connor the next day about these issues.  (D.N. 37-4, PageID.184, PageID.184; D.N. 37-8)  According to Streete, it was Logan's responses to questions during the September 7 meeting that led to his termination.  (D.N. 37-4, PageID.185)  Streete and Smith both stated in meeting notes that, during the September 7 meeting, Logan admitted to taking a lunch break on September 4, 2018, but he did not record any breaks on that date.  (D.N. 37-7; D.N. 37-8)  Logan, however, testified that he did not say that during the meeting.  (D.N. 89-1, PageID.1040)  According to Logan, "[a]ll the times when they said I didn't record my break" are inaccurate.  (*Id.*)

An employer does not "proceed along lines previously contemplated" when it "alter[s] the timeline for dismissal" or when its "first step showing the contemplation of termination" occurs after the plaintiff's protected activity.  *Campbell-Jackson*, 2024 U.S. App. LEXIS 30294, at *22 (finding that the employer did not defeat causation based on temporal proximity because any evidence indicating a "contemplation of termination was the day after" the employee's protected activity); *see also Montell*, 757 F.3d at 507.  On the other hand, the Sixth Circuit has found that an employer proceeds along lines previously contemplated, and thus found a lack of causation, when

20

an employee had been warned of his inadequate performance and that "termination was on the table" before the plaintiff engaged in any protected activity. *Davis v. University of Louisville*, No. 21-6240, 2022 U.S. App. LEXIS 30997, at *8 (6th Cir. Nov. 7, 2022); *see also Haydar v. Amazon Corp., LLC*, No. 19-2410, 2021 U.S. App. LEXIS 28182, at *4 (6th Cir. Sep. 16, 2021) (finding a lack of causation because management had made a note that the plaintiff was being "managed out" and that it was "prepar[ing] for him leaving the company" before he made his HR complaints).

Here, unlike *Campbell-Jackson*, UPS's "first step showing the contemplation of termination" did not occur after Logan's protected activity. 2024 U.S. App. LEXIS 30294, at *22. Rather, UPS had taken steps to document Logan's poor performance before his HR complaint and before his termination. (D.N. 37-8; D.N. 37-9) And similar to the situation in *Davis*, Streete had warned Logan about his poor performance a few months prior to his termination when he talked to Logan about his routes exceeding the normal route time and "stressed the importance of recording" his breaks. (D.N. 37-4, PageID.183 ¶ 8) Therefore, the Court may not consider the temporal proximity between Logan's HR complaint and termination as evidence of causality. *Montell*, 757 F.3d at 507. Logan has thus failed to establish causation and consequently failed to establish a prima facie case of retaliation. *Id.*

### 3.    2019 EEOC Complaint

An EEOC complaint alleging discrimination or retaliation is a protected activity. *Greer*, 2023 U.S. App. LEXIS 28183, at *11. But even assuming that UPS knew of that complaint, there is no temporal proximity between the 2019 EEOC complaint and Logan's termination. Logan's termination was seven to eight months removed from Streete learning of his EEOC charge (D.N. 37-1, PageID.104; D.N. 93, PageID.1140), which is insufficient, standing alone, to establish causation. *See Hamilton v. Starcom Mediavest Grp.*, 522 F.3d 623, 630 (6th Cir. 2008) (finding

that temporal proximity of nine months was insufficient to establish causation); *Cooper v. City of N. Olmsted*, 795 F.2d 1265, 1272–73 (6th Cir. 1986) (finding that temporal proximity of four months was alone insufficient to establish causation).  Logan must therefore present additional evidence of causation.  *Bailey v. Oakwood Healthcare, Inc.*, 732 F. App'x 360, 368 (6th Cir. 2018) ("[T]he more that a protected activity is temporally distant from the adverse employment action, the more the plaintiff must supplement his claim with other evidence of retaliatory conduct to establish causality.").

The evidence presented by Logan as to the 2019 EEOC complaint and 2020 termination is insufficient to establish causation, however.  Logan claims that his vehicle was overloaded in comparison to other drivers, but he again relies on the unsworn statements of a pre-loader and a union steward for the truth of the matter asserted.  (*See* D.N. 89, PageID.1003; D.N. 89-1, PageID.1017–18)  As explained above, such statements are inadmissible hearsay and thus may not be considered on summary judgment.  *See* Fed. R. Evid. 801(c); *Alpert*, 481 F.3d at 409.  Logan also failed to provide evidence as to when he was overworked or over-dispatched.  (*See* D.N. 89)  If he was overworked before his EEOC complaint, Logan could not establish that UPS "took the adverse employment action *because* [he] engaged in protected activity."  *Hymes*, 2024 U.S. App. LEXIS 3563, at *12 (emphasis added); *see also Blount*, 55 F.4th at 515.

Logan also provides evidence that Tim Leachman's 2020 annual self-review stated that he "[g]ot rid of a difficult employee through in-depth investigation and a close working relationship with the labor department" as one of his accomplishments.  (D.N. 89, PageID.1004 (quoting D.N. 91, PageID.1129))  Logan argues that he "could be called the 'difficult' employee" because of his complaints to HR and management.  (*Id.*)  But without more, this is "mere speculation," which is insufficient to overcome a motion for summary judgment.  *Kilpatrick v. HCA Human Res., LLC*,

838 F. App'x 142, 147 (6th Cir. 2020).  Logan has thus failed to establish a prima facie case of retaliation as to his 2019 EEOC complaint.  *See Blount*, 55 F.4th at 515.  UPS's motion for summary judgment will therefore be granted as to Count II.

### III.

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1)    UPS's motion for summary judgment (D.N. 37) is **GRANTED** in part and **DENIED** in part.  The motion is **GRANTED** as to Count II.   The motion is **DENIED** as to Count I.

(2)    The Court requests that U.S. Magistrate Judge H. Brent Brennenstuhl (D.N. 4) conduct a status conference and set a final litigation schedule, to include a settlement conference.

March 28, 2025

**David J. Hale, Judge**
**United States District Court**

cc:    U.S. Magistrate Judge H. Brent Brennenstuhl